## JOHN KUHLMAN v. AUGUST BLOW.

Where the suit was by an apprentice, who had served his time, for damages against his master and for a balance for labor after the expiration of his time, and there was neither bill of exceptions nor statements of facts, yet the court discussed the findings of the jury and the charge of the court, and, giving every presumption in favor of the charge, sustained the judgment.

Where the petition declared an item for $120, and the verdict was for $140, on that item the court allowed the seeming error (the difference might have been caused by interest) to be cured by remittitur.

ERROR from Harris. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

The facts are sufficiently stated in the opinion of the court.

*Hill & Hill,* for plaintiff in error.—The pleadings do not support the verdict and judgment. When this is the case there must be a reversal, although there be no statement of facts or bill of exceptions in the record. (Neill v. Newton, 24 Tex., 202; 27 Tex., 434, 534.)

*A. H. Willie,* for defendant in error.

CALDWELL, J.—This suit was brought in the district court of Harris county by the defendant in error against the plaintiff in error to recover compensation for four months' service, of the alleged value of $120, and also $20,000 damages for alleged breaches of the stipulations of a contract of apprenticeship. It was commenced on 14th of August, 1866, and came on for trial at the May term, 1867, of said court. August Blow, the defendant in error, was, it appears, on the 18th of September, 1847, (then only eight years and four months old,) apprenticed to John Kuhlman, the plaintiff in error, by a certain contract in writing, executed by the minor, his father, Charles Sebastian Blow, and the plaintiff in error, which was recorded in the county court clerk's office on the same day. Blow lived with and served Kuhlman under this contract until he attained his majority, on 27th of April, 1860, and afterwards, in ignorance that it had expired, until about 1st of September, 1860, when he finally left. The stipulations of the contract were, that Blow was to serve Kuhlman, after the manner of an apprentice, for the full period and term of his minority, his secrets to keep, and obey all his lawful commands, do no damage to his master nor see it done by others without giving due notice; that he should not waste his master's goods nor lend them unlawfully to any one; that he should not marry within said term, nor do any unlawful act by which his master might suffer injury; that he should not trade with his own or other peoples' goods without license from his master, nor absent himself

from his master's service day or night, but in all things should behave himself as a faithful apprentice ought to do during his term of service. Kuhlman, on his part, stipulated that he would use his best endeavors to have his said apprentice taught or instructed in the trade, business, or mystery of a farmer, and provide for him good and sufficient meat, drink, clothing, washing, lodging, and also schooling fitting an apprentice during the term of his apprenticeship, and from time to time bestow upon him such rewards as his conduct and services deserved and might be fair and customary. A copy of the contract is attached to and made a part of the petition. The petitioner, Blow, alleges in his petition, that soon after he became bound under this contract, both of his parents (who were foreigners) died, leaving him without kindred under Kuhlman's control, who, instigated by avarice, and regardless of the obligations of his contract, almost entirely failed to comply with the stipulations entered into by him for petitioner's benefit, while he exacted a most scrupulous performance of all petitioner's obligations arising under said contract. He alleges that, so far from conferring on him, petitioner, an education fitting an apprentice, he compelled him to labor at hard work almost during the entire term of his apprenticeship, sending him to school only six weeks, although petitioner frequently requested to be sent to school sufficiently long to acquire a common English education; in consequence, petitioner grew up illiterate and unable to cipher or keep accounts, and only able imperfectly to read and sign his own name, which he learned mainly through his own application and without a teacher. Petitioner further alleged, that although he had faithfully labored for and served defendant without default through the whole period of his apprenticeship, defendant did not at any time "bestow upon him, according to his contract, such rewards as his conduct and services deserved and were fair and customary." He further alleged, that at divers and

sundry times, and particularly in the winter of 1857, defendant failed and refused to furnish him with good and sufficient clothing, thereby endangering his life during the severity of the winter, to which defendant compelled him to be exposed.　For these several breaches of the contract on the part of the defendant, Kuhlman, the petitioner, Blow, claimed to recover damages in the sum of $20,000, besides the compensation claimed for the four months' service rendered after he had attained his majority.　Kuhlman answered and denied the charges against him, alleged the treatment and schooling of Blow to be such as were given his own children, and that at the expiration of his term of service he offered him $100 in specie and a horse, which he refused to receive.　On the 23d of May, 1867, the petitioner, Blow, filed an amendment, alleging (among other things not material) that the wrongs complained of in his original petition were deliberate and willful, committed with fraudulent design and the deliberate purpose to defraud and injure him, and repeating his prayer for judgment for $20,000 damages for the irreparable wrongs inflicted upon him.　Upon this state of the pleadings the parties went to trial, and, after hearing the evidence, argument of counsel, and charge of the court, the jury returned the following verdict: "We the jury find for the plaintiff, for service from the fifteenth year of his age to his twenty-first, $1,080; for further four months, $140; for damages, $1,000; in all $2,220."　Kuhlman moved for a new trial, which was overruled, and he has brought the case in this court by writ of error; and, in the absence of any bill of exceptions or statement of facts, relies, as appears from the brief of his counsel, upon two errors assigned as good ground of reversal of the judgment of the court below, viz: First, that the verdict of the jury is not responsive to or supported by the pleadings; and, second, that the court erred in its charge to the jury as to the rule and measure of damages, by which the jury were necessarily misled to find an

illegal and wrongful verdict. The portion of the charge objected to is as follows: "The measure of damages in this case (in the absence of any question of exemplary damages) is the value of the labor and services of plaintiff from 18th of September, 1847, to 27th of April, 1860, less the reasonable cost of supporting the plaintiff and giving him such education as the articles of apprenticeship required." As far as the first objection of the counsel of plaintiff in error to that part of the verdict which finds $140 for services rendered since the majority of Blow, when his petition claims only $120, is concerned, the objection is clearly well taken, and we should be compelled to reverse the judgment on this ground without going further, if defendant in error had not offered to remit the $20 excess, which disposes of the objection. The next objection is, that the verdict, $1,080, for services from fifteenth year of Blow's age until his majority, when the petition sets forth no claim for compensation for services except for those rendered after his majority. Upon a careful examination of the whole record we are constrained to think the counsel for plaintiff in error has misconceived the meaning of this part of the verdict, by looking only to the form in which it is rendered. Its true construction and meaning are a verdict for the actual damages sustained, and the services of defendant in error are merely referred to, to show that the jury adopted the rule of damages laid down in the charge of the court in ascertaining the amount of those damages. This construction renders the verdict responsive to the charge of the court and the pleadings in the cause, and as after verdict, according to repeated decisions of this court, every presumption is to be indulged in support of the verdict, especially in the absence of any bill of exceptions or statement of facts, we feel constrained to adopt that construction, when the language will fairly admit of it, which supports, and not that which destroys, the verdict. The second error assigned is, that the court erred in its charge to the jury upon the

measure or rule of damages. In answer to this we must say that if, in the absence of any statement of facts or bill of exceptions, we must presume that all the material allegations of the petition were legally established by competent evidence, then, looking to the allegations of the petition in this case, if the conduct of plaintiff in error towards his apprentice was even half as bad as represented, he would have no right to complain of the rule or measure of damages laid down in the charge of the court, as it would be much more favorable to him than that suggested in the brief of his own counsel. Upon looking over the whole record, in the absence of any statement of facts or bill of exceptions, we can discover no error (even if any exists) of which plaintiff in error has a right to complain, and therefore affirm the judgment for the whole amount, less $20 excess remitted by defendant in error.

JUDGMENT AFFIRMED.